UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x

In re. BENJAMIN HIRSCH,

               Debtor,

                                       **MEMORANDUM AND ORDER**
                                       05-CV-1454 (CBA),
                                       05-CV-2266 (CBA)

------------------------------------------------x

AMON, United States District Judge.

## I.     Introduction

Before the Court are two appeals of orders of the United States Bankruptcy Court for the Eastern District of New York ("the bankruptcy court"). The first, filed under docket number 05-CV-1454, challenges an order on the record reducing the proof of claim filed by appellant Nachama Hirsch ("Nachama") against the bankruptcy estate of her former husband, Benjamin Hirsch (the "Debtor," or "Benjamin"). Nachama first contends that the bankruptcy court should have increased her claim to compensate her for the value of certain marital property which had been fraudulently transferred away from Benjamin's estate. Nachama alternatively contends that the bankruptcy court lacked jurisdiction to determine the size of her equitable distribution claim, since that claim arose from a decision of the state court hearing the parties' action for divorce which had not yet been reduced to a judgment.

In the second case, filed under docket number 05-CV-2266, Nachama appeals an order of the bankruptcy court finding that she violated the automatic stay provisions of the Bankruptcy Code, and exceeded the scope of relief which the court had granted from that stay, by moving for entry of a judgment (the "Third Amended Judgment") in the state court matrimonial action.

## II.     Background

The issues presented in these cases arise from the relationship between the bankruptcy of appellee Benjamin Hirsch and the divorce proceedings between him and his former wife, appellant Nachama Hirsch.

### A.     The State Court Proceedings

On October 30, 2000, the Supreme Court of the State of New York ("the state court") granted a judgment of divorce in favor of Nachama on the grounds of constructive abandonment, but stayed entry of judgment to allow the parties to resolve ancillary matters including the equitable distribution of marital property.  Nachama subsequently amended her complaint to include additional defendants, including Coney Island Land Co., LLC, Digby Apartments, Inc., Fiduciary Holding, LLC., Sheldrake Holding Co., LP, (collectively, "the Entity Debtors"), and the Hirsch Family Trust ("the Trust"), an irrevocable family trust which owns the shares (or partnership or membership interests, as appropriate, but referred to herein as "shares") of the Entity Debtors.  In the amended complaint, Nachama sought the imposition of a constructive trust, alleging that Benjamin had wrongfully transferred certain properties (the "Trust Properties") from the marital estate to the Trust and to the Entity Debtors after the commencement of the divorce action.[1]

_____

[1] The parties own or have owned numerous properties.  The properties alleged to have been transferred by Benjamin, organized by the entity holding title, are: Fiduciary Holdings, LLC: 2098 East 7th St., Brooklyn, NY; 945 East 27th St., Brooklyn, NY; White House Estates Unit 24C; 1350 Ocean Parkway, Apt. 1F, Brooklyn, NY.  Digby Apartments, Inc.: 2265 Gerritsen Ave., Brooklyn, NY.  Coney Island Land Co., LLC: 900-902 Coney Island Ave., Brooklyn, NY. Sheldrake Holding Company, LP: undeveloped property at Levine Road, Loch Sheldrake.  The state court found that the marital estate also included the following real properties to which Benjamin held title: High Spruce Apartments (24 units) at 730-740 Martin Luther King Blvd., Newark, NJ; 2115 Ave I, Brooklyn, NY; 1450 Ocean Ave., Brooklyn, NY.  Finally, Nachama held title to properties at 941 E. 27th St and at 2513 Ave. I in Brooklyn, NY.  The state court ordered that the latter property be sold and the proceeds applied to reduce an outstanding IRS

On May 10, 2002, the state court issued a Decision After Trial in which it declined to impose a constructive trust but found, *inter alia*, that Benjamin had fraudulently conveyed the Trust Properties to the Entity Debtors and the Trust, in violation of Sections 275 and 276 of New York's Debtor and Creditor Law ("DCL"). See Decision After Trial, Hirsch v. Hirsch, Index No. 20231/97 (N.Y. Sup. Ct. May 10, 2002). The court held that the transactions should be set aside under Section 278 of the DCL, and that title to the Trust Properties and ownership of the shares of the Entity Debtors should revert to Benjamin's estate. Id. at 22–23. The decision also held that Nachama would receive 50% of the marital property, or $2,444,111.80, consisting of title to the Trust Properties and three other real properties (collectively, the "Marital Properties"),[2] valued at $333,063.62, and fifteen annual payments of $140,736.54. The property at 2513 Ave. I in Brooklyn, NY would be sold to reduce the parties' debt to the IRS. The court ordered the parties to settle judgment within 60 days.

B.    The Bankruptcy Proceedings

1.    History

On June 21, 2002 ("the Filing Date"), before judgment was entered in the state court, Benjamin and the Entity Debtors filed separate Chapter 11 bankruptcy petitions, thus triggering the automatic stay provisions of 11 U.S.C. § 362. Nachama nevertheless settled a judgment for presentment in the state court and a judgment of divorce was entered on July 1, 2002, despite Benjamin's objection that the matrimonial proceedings had been stayed. The bankruptcy court agreed with Benjamin, and on February 18, 2004 held that this judgment was void because it

_____

lien.

[2] The Marital Properties include the Trust Properties and the properties at 2115 Ave I, 1450 Ocean Ave., and 941 E. 27th St, all of which are in Brooklyn, NY.

violated the automatic stay.

On November 18, 2002, Nachama filed complaints against Benjamin and the Entity Debtors in bankruptcy court, seeking a declaratory judgment that the Marital Properties were not part of the debtors' respective bankruptcy estates, and an order that the properties be transferred to Nachama. Granting summary judgment motions by Benjamin and the Entity Debtors, the bankruptcy court held that the Marital Properties belonged to the debtors' bankruptcy estates, except for the two properties to which Nachama held title. This Court affirmed that decision in an Order issued on December 13, 2004. See Memorandum & Order, Hirsch v. Coney Island Land Co., No. 03-CV-3128 (December 13, 2004). This Court's decision was not appealed.

2.      Relief from the Automatic Stay (05-CV-1454)

In August of 2003, Nachama again sought to enter a judgment in the state court matrimonial proceedings, and moved the bankruptcy court for relief from the automatic stay for that purpose. On February 18, 2004, the bankruptcy court granted Nachama limited relief from the stay, but noted that any judgment entered in the state court would not transfer title to the real properties "because of the bankruptcy." Decision and Order 8, In re. Benjamin Hirsch, No. 02-17966-633 (Bankr. E.D.N.Y. February 18, 2004) [hereinafter, "Lift Stay Order"]. Nachama has since proposed three separate judgments to be entered in the state court matrimonial proceeding. The bankruptcy court has found each to violate the provisions of the automatic stay.

Nachama moved to enter the First Amended Judgment in state court on August 6, 2004. At a conference before the bankruptcy court on August 26, 2004, Nachama's counsel agreed to redraft two paragraphs in the First Amended Judgment to reflect that any statements in the judgment directing Benjamin to make payments to Nachama would be subject to further order of the bankruptcy court. The Second Amended Judgment, *inter alia*, directed the Trust to convey

the shares of the Entity Debtors directly to Nachama. The bankruptcy court found that this constituted an attempt to recover on a fraudulent conveyance claim, and that such actions were prohibited by the automatic stay imposed by 11 U.S.C. § 362(a), as construed by the Second Circuit in <u>In re Colonial Realty</u>, 980 F.2d 125 (2d Cir. 1992). Finally, on December 6, 2004, Nachama proposed a Third Amended Judgment to the state court, seeking to have the shares in the Entity Debtors conveyed from the Trust to Benjamin's bankruptcy estate. <u>See</u> Proposed Resettled/Amended Judgment of Divorce, <u>Hirsch v. Hirsch</u>, Index No. 20231/97, at 7 (N.Y. Sup. Ct.) [hereinafter, "Third Amended Judgment"]. On December 23, 2004, the bankruptcy court issued a Decision and Order stating that the court "had difficulty" with two decretal paragraphs in this proposed judgment, but allowing Nachama to settle a proposed judgment without those paragraphs pending the court's ultimate decision on the Third Amended Judgment. The court clarified its objections to the proposed judgment in a Decision and Order dated March 31, 2005, which Nachama presently appeals to this Court under docket number 05-CV-2266. <u>See</u> Decision and Order on Application for Sanctions with Regard to Settling Judgment on State Court Decision, <u>In re. Hirsch</u>, No. 1-02-17966 (Bankr. E.D.N.Y. March 31, 2005) [hereinafter "Decision on Third Amended Judgment"].

The first paragraph (the "First Decretal Paragraph") that the bankruptcy court had difficulty with stated:

> ORDERED AND ADJUDGED, that the defendant, HIRSCH FAMILY TRUST, assigns its entire interest representing 100% ownership of the membership interests, stock interests, or other interests in the following entities: FIDUCIARY HOLDINGS, LLC, CONEY ISLAND LAND COMPANY, LLC, DIGBY APARTMENTS, INC., SULLIVAN LAND COMPANY, INC., and SHELDRAKE HOLDING COMPANY, L.P., to the defendant, BENJAMIN HIRSCH, which shall subject such membership interest to the jurisdiction of the bankruptcy court

having jurisdiction over the Chapter 11 proceeding involving
BENJAMIN HIRSCH....

Third Amended Judgment, at 7.  The second problematic paragraph (the "Second Decretal

Paragraph") stated:

> ORDERED AND ADJUDGED, that as a result of the
> impact of the bankruptcy court's Decision and Order dated March
> 31, 2003 (the "Adversary Order") which, *inter alia*, held that title
> to the Properties would not be transferred to NACHAMA in
> accordance with the Decision, a hearing will be held before this
> court on _____ 2005 at 9:30 to determine the amount of a
> supplemental distributive award if any (the "Supplemental
> Distributive Award") to which plaintiff is entitled based upon the
> value of the equity in the Properties as of June 21, 2002 (the
> "Supplemental Hearing").

Id. at 8.

The bankruptcy court found that these paragraphs were inconsistent with the state court

decision and contemplated actions in violation of the automatic stay and outside the scope of the

court's Lift Stay Order.  In her appeal, Nachama argues that the First Decretal Paragraph does

not violate the automatic stay, and that even if it does, neither it nor the Second Decretal

Paragraph violates the terms of the court's relief from the automatic stay.  Nachama advises the

Court, however, that issues relating to the second decretal paragraph have been superceded by

the bankruptcy court's subsequent decision fixing the allowable claim against Benjamin, and that

those issues are therefore moot.[3] (See Appellant's Reply 3.)

    3.       Fixing of the Claim (05-CV-2266)

While Nachama was attempting to settle judgment in the state court, she filed a proof of

---

[3] The bankruptcy court's decision determining Nachama's claim against Benjamin's estate was
issued on January 20, 2005, after Nachama had settled the Third Amended Judgment in state
court on December 6, 2004, but before the bankruptcy court issued its decision regarding the
proposed judgment on March 31, 2005.

claim against the debtor Benjamin with the bankruptcy court, in the amount of $4,605,160.00.

Benjamin objected to that claim as overstated, arguing that Nachama was entitled only to the

distributive award of $2,444,111.80 less the net equity in two of the Marital Properties to which

she already held title,[4] for an award of a sum certain of $2,240,358.92.  Nachama subsequently

acknowledged that she had misinterpreted the state court decision and overstated her claim, and

advised the court that her claim should be:

> (i) a distributive award of $2,111,048.20,
> (ii) the cash value of the equity in each of the Marital Properties as of the Filing Date,
> (iii) attorneys' fees in the amount of $50,000, and
> (iv) rents held by the Receiver.

On January 20, 2005, the bankruptcy court issued an oral ruling that Nachama's claim

should be $2,220,558.92, representing half of the marital estate as determined by the state court,

or $2,444,111.80, less the equity in two properties to which Nachama already held title.[5]

Nachama appeals that Order to this Court under docket number 05-CV-1454, arguing that the

bankruptcy court erred by failing "to consider that Appellant is entitled to a separate award on

account of her proven claims...under §§ 273 and 276 of the DCL" and also arguing that the

bankruptcy court lacked jurisdiction to determine the amount of Nachama's equitable

distribution claim since the state court decision had not been reduced to a judgment.

---

[4] These properties were 941 E. 27th St. and 2513 Avenue I, both in Brooklyn, New York.

[5] The bankruptcy court found that Nachama held title to properties at 941 E. 27th St. and 2513 Ave. I, in Brooklyn, NY, and also found that the net equity in these properties was worth $100,403.88, and $123,149, respectively.  The bankruptcy court therefore deducted $223,552.88 from Nachama's equitable distribution claim of $2,444,111.80 and concluded that she had a claim against Benjamin for $2,220,558.92.

### III.  Standard of Review

The Court reviews the bankruptcy court's determinations of matters of law *de novo*. Asbestosis Claimants v. United States Lines Reorganization Trust (In re United States Lines, Inc.), 318 F.3d 432, 435 (2d Cir. 2003).  A bankruptcy court's interpretation of a court order is considered a conclusion of law that is subject to *de novo* review.  See Goldman, Sachs & Co. v. Esso Virgin Is., Inc. (In re Duplan Corp.), 212 F.3d 144, 151 (2d Cir. 2000).  The factual findings of the bankruptcy court must be upheld unless "clearly erroneous." Fed. R. Bankr. 8013; Asbestosis Claimants, 318 F.3d at 435.  The Court may find a determination of the bankruptcy court to be "clearly erroneous" when, on consideration of the record as a whole, the Court "is left with the definite and firm conviction that a mistake has been committed." Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  Mixed questions of law and fact are reviewed *de novo*.  See In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).  Matters left to the court's discretion are reviewed for abuse of discretion.  DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75, 79 (2d Cir. 1998).


### IV.  Discussion — 05-CV-1454

#### A.  The Bankruptcy Court's Jurisdiction.

Nachama argues that "[t]he Supreme Court of the State of New York is given exclusive jurisdiction to determine the nature and extent of property subject to equitable distribution in a matrimonial action while the bankruptcy court is given exclusive jurisdiction to adjudicate the impact of the equitable distribution entitlement on property subject to the claims of creditors of the bankruptcy estate."  (Appellant's Br. 9–10.)  The bankruptcy court therefore erred, Nachama

argues, by determining the amount of her claim prior to entry of a judgment in the matrimonial action. Benjamin argues that if the state court decision has no effect because a judgment has not been rendered, then Nachama logically would as yet have no claim whatsoever, a result that neither party believes to be correct.

Under New York law, only a court hearing "an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage" may determine the equitable distribution of marital property due each spouse. N.Y. Dom. Rel. Law § 236B(5); Meier v. Meier, 153 Misc. 2d 72, 74 (N.Y. Misc. 1992) ("[E]quitable distribution is available only in the context of a termination of the marital relationship."); see also In re Hilsen, 119 B.R. 435, 439 (S.D.N.Y. 1990); In re Greenwald, 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991) ("In New York, a final judgment in a marital action by a court of competent jurisdiction determines the rights between the parties."); cf. Chasnov v. Chasnov, 131 A.D.2d 624, 625 (N.Y. App. Div. 1987) (finding divorce decree defective because it did not provide for equitable distribution). Since the bankruptcy in this case court is not granting the parties' divorce, the court may not under New York law determine the equitable distribution the parties are due.

The bankruptcy court, however, was not deciding the equitable distribution awards to be given the parties as a result of their divorce. Rather, it was attempting to determine the amount of a claim which Nachama had filed with the bankruptcy court on the basis of her state law equitable distribution rights. Those rights need not have been reduced to a judgment in order to give Nachama a claim against the bankruptcy estate. See 11 U.S.C. § 101(5) (stating claim need not be reduced to judgment); H. Rept. No. 95-595, at 308–14, 95th Cong., 1st Sess. (1977) (stating claim given "broadest possible definition" so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case"). The

estimation and allowance or disallowance of claims against a debtor's estate are core

proceedings over which a bankruptcy court has jurisdiction.  See 28 U.S.C. § 157(b)(2)(B)

(defining estimation and allowance or disallowance of claims as core proceedings); 28 U.S.C. §

1334 (defining bankruptcy jurisdiction to include core proceedings); see S.G. Phillips

Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702,

705–07 (2d Cir. 1995) (holding bankruptcy court's determination of creditor's claim to be a core

function because "nothing is more directly at the core of bankruptcy administration … than the

quantification of all liabilities of the debtor" (quotation marks and citation omitted)); Gulf States

Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d

1384, 1389–90 (2d Cir. 1990) (holding objection to claim proceeding fell within bankruptcy

jurisdiction, even though claim was based on pre-petition state law right, because party

consented to jurisdiction by filing proof of claim).  Thus, the bankruptcy court had jurisdiction to

determine the amount of Nachama's claim against Benjamin's estate.  This is true even if

Nachama filed her proof of claim under protest and thus may not have "consented" to the court's

jurisdiction.  See In re S.G. Phillips Constructors, Inc., 45 F.3d at 706–08 (holding filing of

claim "under protest" nevertheless gives bankruptcy court jurisdiction to determine claim

because "determination that a proceeding is core does not depend on the consent of the parties").

The Court therefore concludes that the bankruptcy court had jurisdiction to determine the

allowable amount of Nachama's claim against Benjamin's estate.

     B.    The Amount of Nachama's Claim

     The bankruptcy court erred in determining the precise amount of Nachama's claim.  The

court derived Nachama's allowable claim against the bankruptcy estate by subtracting the value

of marital property to which she held title from her claim for equitable distribution from the

marital estate. The state court had decided that Nachama was entitled to one half of the marital estate, which it valued at $2,444,111.80. That court further found—and the parties appear to agree—that Nachama already held title to two real properties belonging to the marital estate. Since these properties were not part of Benjamin's bankruptcy estate, the bankruptcy court apparently reasoned that Nachama could retain title to them and deducted their value from her equitable distribution claim. The bankruptcy court thus determined that she had a claim for $2,220,558.92 against Benjamin's bankruptcy estate.

If Nachama's claim against Benjamin is calculated by summing the amounts which the state court determined Benjamin would have to pay Nachama, a significantly higher figure results. The state court's Decision After Trial stated that Benjamin would be ordered to pay Nachama $2,111,048.20 in cash, transfer to her the titles to two properties which Benjamin held directly and which had a net equity of $96,495, and transfer to her the titles to the seven Trust Properties that he would receive upon the unwinding of the fraudulent conveyances and which had a collective net equity of $136,164.74.[6] The state court thus anticipated ordering Benjamin to pay or transfer to Nachama money or property worth $2,343,707.94. It would seem that this should be the amount of Nachama's claim against Benjamin's bankruptcy estate.

The difference between that figure and the amount calculated by the bankruptcy court is attributable to the courts' differing treatments of the property located at 2513 Avenue I in Brooklyn, New York. The state court determined that the property was subject to an IRS lien

---

[6] The bankruptcy court previously held, in an order affirmed by this Court, that the Decision After Trial contemplated giving Nachama a claim against Benjamin for the seven Trust Properties, not a claim against the Entity Debtors. See Memorandum and Order 4–5, Hirsch v. Coney Island Land Co., LLC, No. 04-CV-2282 (E.D.N.Y. December 13, 2004).

which exceeded the value of the property and reduced its net equity to zero.[7]  As a result, the court did not give the property any value when establishing the size of the marital estate, and did not award the property to either spouse.  Instead, the court directed the property to be sold and the proceeds used to reduce the parties' debt to the IRS.  Decision After Trial at 25.  The bankruptcy court, however, assigned the property a value of $123,149, and credited that amount against Nachama's award from the marital estate.  This is incorrect for three related reasons. First, assigning this property a value higher than that contemplated by the state court has the effect of increasing the size of the marital estate, but does not also adjust the parties' equitable distribution claims.  If the property were to be given a value of $123,149, and all other values remained as decided by the state court, then the marital estate would be worth $5,011,372.60, not $4,888,223.60.  Nachama's claim against the estate should then be proportionally higher.  Under the bankruptcy court's method, however, Nachama would receive $2,444,111.80 from the (adjusted) marital estate, while Benjamin would be left with the remaining $2,567,260.80. Second, any judgment consistent with the Decision After Trial would in all probability direct the sale of this property for the benefit of both parties.  It therefore would be a mistake to assign this property a value accruing to only one of the parties.  Finally, insofar as the bankruptcy court is determining the amount of Nachama's claim as predicated on the Decision After Trial, and has adhered to all of the other values assigned in that decision, the bankruptcy court should not deviate from the state court's determination that this property had a net value of zero dollars.

_____

[7] In oral argument to the bankruptcy court, Benjamin's attorney asserted that the IRS lien applies to "both properties that are titled to Mr. Hirsch and both of the properties that are titled to Mrs. Hirsch" and asserted that the IRS lien was "not factored into the valuation of any of the properties" by the state court. (Tr. at 18–19 (January 20, 2005).)  Even if both propositions are true, it is evident that the state court did consider the lien's effect on 2513 Ave. I when valuing the marital estate and determining the parties' equitable distribution awards. The lien thus should be considered by the bankruptcy court when deriving a bankruptcy claim from that decision.

For these reasons, the Court has a "definite and firm conviction" that a mistake has been made, and concludes that the bankruptcy court's factual finding as to the amount of Nachama's bankruptcy claim was clearly erroneous.[8]

Nachama strenuously argues that her claim in fact should not be either $2,343,707.94 or even $2,444,111.80 but should be some unspecified figure reflecting appreciation in the Marital Properties between 1999 and 2002. In essence, she contends that because the state court intended to award her $2,111,048.20 in cash plus possession of the Marital Properties, and because she was foreclosed from receiving those properties by the bankruptcy filings, the bankruptcy court should have calculated her claim on the basis of the Marital Properties' values as of the June 21, 2002 bankruptcy filing date rather than on the basis of the 1999 values to which the parties had stipulated for purposes of the divorce action. This would presumably increase Nachama's claim to reflect appreciation in the Marital Properties between 1999 and 2002. In reply, Benjamin argues that the state court awarded Nachama an equitable distribution of $2,444,111.80 from the marital estate, part of which was to be paid by an in-kind distribution of property. He argues that her subsequent inability to receive those properties, as a result of the

---

[8] The Court notes that certain other of the figures used by the bankruptcy court were unreliable. The state court held that the net equity in the 2513 Ave. I property—if the IRS lien was ignored—was either $100,849 or $103,349, depending on whether a plumbing debt asserted by Benjamin was credited. (Decision After Trial, at 25–26.) The bankruptcy court, by contrast, found that the net equity in this property was $123,149. This is why even Benjamin himself initially asserted that Nachama was entitled to a claim $19,800 *higher* than the figure the bankruptcy court ultimately arrived at. (Compare Application, ¶ 14 (June 16, 2003) (asserting Nachama's claim to be $2,240,358.92) with Transcript at 20 (January 20, 2005) (fixing claim at $2,220,558.92).) Ten thousand dollars of the difference may be attributed to the fact that the bankruptcy court, accepting figures presented by Benjamin's attorneys, believed that the parties had stipulated in 1999 to a value of $250,000 for the property, while the state court began with a stipulated value of $240,000. (Compare Tr. at 20 (January 20, 2005) and Spickler Aff. ¶ 6 with Decision After Trial at 25.) The remaining $9,800 is attributable to liens which the state court had found to be asserted against the property but which the bankruptcy court did not consider.

bankruptcy filings, does not entitle her to a larger claim *per se*; she is entitled only to the value which the state court assigned those properties in its decision. Moreover, Benjamin asserts, the fraudulent conveyances by which those properties were placed out of her reach were completely "unwound" when the Entity Debtors paid $136,164.74 to Benjamin's estate upon confirmation of their bankruptcy plan.

As an initial matter, whether or not Benjamin's estate has received sufficient value to remedy the fraudulent conveyances is irrelevant to the calculation of Nachama's claim against that estate. As prior rulings of the bankruptcy court and this Court have held, Nachama's claim lies against Benjamin's estate and not the Entity Debtors. The amount of her claim would be unaffected by any finding that Benjamin's estate had (or had not) received money or property sufficient to "unwind" the fraudulent conveyances. Only if Nachama herself had received property or value from the transferees—which neither party alleges—would the alleged satisfaction of the fraudulent transactions affect the amount of her outstanding claim. Therefore, the Court declines to address whether the payment of value pursuant to the Entity Debtors' bankruptcy plan satisfactorily unwound the alleged fraudulent conveyances.

The bankruptcy court did not state its reasons for basing its calculation of Nachama's bankruptcy claim on the 1999 values that the state court had used to determine the size of the marital estate in its 2002 Decision After Trial. Instead, the bankruptcy court simply stated that it "would not have valuations of the properties after the petition date." (Tr. at 15 (January 20, 2005).) Nachama, however, had requested a valuation of the properties *as of* the petition date, not after. Nevertheless, it is clear to this Court that the state court awarded Nachama equitable distribution of $2,444,111.80 from the marital estate, $333,063.62 of which was to be paid in the

form of property.[9]  See Decision After Trial, at 33 ("In order for the Wife to receive

$2,444,111.80, which is fifty (50%) per cent of the value fo the marital property, the Wife shall

have title to the ten properties other than High Spruce and a distributive award.").  The state

court issued its decision on May 10, 2002, only six weeks before the filing of Benjamin's

bankruptcy petition.  Although the state court's figures were based on earlier appraisals, no one

argued that the appraisals should have been updated.  See Decision After Trial, at 5.

Accordingly, it was appropriate for the bankruptcy judge to rely on those figures, as petition date

figures, in fixing Nachama's claim.  Therefore, the Court declines to direct the bankruptcy court

to increase her claim on the basis of 2002 property values.  It remands the case, however, to

adjust her claim consistent with the discussion herein.[10]


### IV.    Discussion — 05-CV-2266

Nachama argues that the bankruptcy court erred by finding that entry of her proposed

Third Amended Judgment violated the terms of the automatic stay, and that even if the judgment

fell within the automatic stay, it was consistent with the relief from that stay which the

---

[9] $333,063.62 represents the collective value of: 1) the properties which the state court found
Nachama held title to and could keep ($100,403.88), 2) the properties she would receive directly
from Benjamin ($96,495), and 3) the Trust Properties which she would receive from Benjamin
after the fraudulent conveyances had been unwound ($136,164.74).

[10] 28 U.S.C. § 1334(c)(1) allows a bankruptcy court to abstain from deciding any core
proceeding "in the interest of justice, or in the interest of comity with State courts or respect for
State law."  It appears from the record that Nachama's attorneys moved the bankruptcy court to
abstain from exercising its jurisdiction in deference to the state matrimonial court. (Tr. at 12
(January 20, 2005) ("Mrs. Hirsch doesn't believe that this court should act as a divorce court....
While the court may have jurisdiction over Mrs. Hirsch, I think that the issues are solely to be
determined by the state court.  We would prefer to have that determination made there.").)  The
bankruptcy court, however, did not directly address the motion and did not state why it believed
abstention was not appropriate.  On remand, it would be helpful in light of a further possible
appeal for the bankruptcy court to articulate its reasons for declining to abstain.

bankruptcy court had previously granted.  For the reasons described below, the Court concludes

that entry of the proposed Third Amended Judgment would violate the automatic stay, but has

some question as to whether it is inconsistent with relief from that stay. Therefore, the Court will

remand this case back to the bankruptcy court for a fuller explanation of its justification for

preventing Nachama from submitting the proposed Third Amended Judgment in state court.

A.     Fraudulent Conveyances

Nachama first contends that under New York law a fraudulent conveyance is void, not

merely voidable, and that the First Decretal Paragraph therefore states only what is already true

by operation of law.  The Court finds that the contrary is true: a fraudulent conveyance is

voidable under New York law, but is not void *ab initio*.  It is true that some courts have stated

that fraudulent transfers are void, not voidable, under New York law. See, e.g.,  In re Faraldi,

286 B.R. 498, 503 (Bankr. E.D.N.Y. 2002) (""Under New York law, fraudulent transfers are

void, not voidable."); Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., 20 F.2d

295, 296 (2d Cir. 1927) (Hand, J.) ("A fraudulent conveyance is void under the New York

statute, and may be disregarded, even by a creditor whose judgment is entered afterwards.").

The weight of authority, however,  holds the reverse. See, e.g., In re Dombroff, 1991 U.S. Dist.

LEXIS 14720 (S.D.N.Y. 1991) ("[A] fraudulent transfer creates merely a voidable title, and not

a title that is void ab initio." (citing 30 N.Y. Jur., Creditors' Rights, § 316)); In re Wlodarski, 115

Bankr. 53, 57 (S.D.N.Y. 1990);  In re Vanity Fair Shoe Corp., 84 F. Supp. 533, 534 (S.D.N.Y.

1949) ("[T]he judicial gloss that 'void' in the fraudulent conveyance statutes means 'voidable' is

well established." (citing City of New York v. Johnson, 137 F.2d 163 (2d Cir. 1943)); Anderson

v. Roberts, 18 Johns. 510, 529 (N.Y. 1820) (stating that "a thing is voidable which is done by a

person who ought not to have done it, but who, nevertheless, cannot avoid it himself, after it is

done" and that fraudulent conveyances are therefore voidable, not void). The New York statute does not permit the transferor to himself recover any property he has fraudulently transferred; it is only as to the transferor's creditors that the transfer may be void. In addition, the transferee of a fraudulent conveyance may convey valid title to an innocent purchaser for value. N.Y. Debt. & Cred. Law § 278(1) (allowing creditors to pursue fraudulent conveyance claims "as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase"). Because fraudulent transfers under are therefore voidable under New York Law, and not void *ab initio*, Nachama's proposed Third Amended Judgment contemplates action that may be within the scope of the automatic stay.

B.      Application of the Automatic Stay

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition automatically stays certain efforts by creditors of the debtor's estate, including:

> (1) the commencement or continuation...of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. §§ 362(a)(1), (3). Thus, once a debtor has filed for bankruptcy, any action to obtain possession of property owned by the debtor is automatically stayed by section 362(a)(3). Similarly, actions against the debtor or to recover a claim against the debtor are stayed by section 362(a)(1). In this case, the bankruptcy court held that the First Decretal Paragraph—which seeks to transfer ownership of shares in the Entity Debtors from the Trust to Benjamin—constituted an

attempt to recover a claim against Benjamin, and therefore was stayed by section 362(a)(1). The Court affirms that determination.

Nachama's contention that the property to be transferred by the First Decretal Paragraph is not property of any bankruptcy estate is correct, but inconsequential. That property is the shares in the Entity Debtors, which are held by the Trust. A "[d]ebtor has no property interest in shares of its own stock owned by its stockholders." In re New York & Worcester Express, Inc., 294 F. Supp. 1163, 1165 (S.D.N.Y. 1968) (citing In re Journal-News Corp, 193 F.2d 492 (2d Cir. 1951)). Thus, an action to obtain possession of shares of a corporation would not be stayed under section 362(a)(3) by that corporation's bankruptcy filing, because those shares would not be property of the corporation's bankruptcy estate. See In re Calamity Jane's, Inc., 22 B.R. 5, 7 (Bankr. D.N.J. 1982) (finding automatic stay did not apply to transaction in debtor corporation's stock). All that means in this case, however, is that the share transfers Nachama has proposed are not stayed by the Entity Debtors' bankruptcy filings, because the Entity Debtors have no property interest in the shares and because Nachama is not pursuing a claim against the Entity Debtors. The transfers nevertheless are stayed by Benjamin's bankruptcy filing.

The bankruptcy court, relying on the decision of the United States Court of Appeals for the Second Circuit in In re Colonial Realty, 980 F.2d 125, 132 (2d Cir. 1992), found that the share transfers proposed by the First Decretal Paragraph were attempts to recover a claim against Benjamin and thus were stayed by his bankruptcy filing. In Colonial Realty, the Second Circuit considered whether an attempt by the FDIC to recover assets that had been fraudulently conveyed by a debtor to a third party fell within the scope of the automatic stay provided by section 362(a). Adopting the statutory interpretation set forth by the Bankruptcy Court for the Northern District of Florida in In re Saunders, 101 Bankr. 303 (Bankr. N.D. Fla. 1989), the

Circuit found that, while the fraudulent conveyance action did not seek to recover "property of the estate" within the scope of section 362(a)(3), it did constitute an attempt "to recover a claim against the debtor" that was stayed by section 362(a)(1). Colonial Realty, 980 F.2d at 131–32. "Absent a claim against the debtor, there is no independent basis for the action against the transferee." Id. (quoting In re Saunders, 101 Bankr. 303, 305–06 (Bankr. N.D. Fla. 1989). Applying that rationale to the present case, the bankruptcy court held that Nachama's attempt have the shares of the Entity Debtors reconveyed to Benjamin's bankruptcy estate constituted an action to recover her claim against Benjamin, and therefore fell within the scope of the automatic stay imposed by his bankruptcy filing.

On appeal, Nachama argues that Colonial Realty may be distinguished because the creditor in that case sought direct possession of property, whereas she proposes to have property returned to Benjamin's estate, where it will be subject to the jurisdiction of the bankruptcy court and available for the benefit of all creditors. This distinction, however, does not dictate a different result under Colonial Realty. A creditor pursuing a fraudulent conveyance claim is necessarily seeking to "recover a claim against the debtor" within the meaning of section 362(a)(1), regardless of whether the creditor seeks to have the property first be reconveyed to the debtor-transferor's estate or to take possession directly for herself. In both cases, the creditor's claim against the third-party transferee flows solely from its claim against the debtor. See Colonial Realty, 980 F.2d at 132. In the similar context of actions "against the debtor," the Second Circuit has held that an individual creditor asserting an alter ego claim against a third party is in essence asserting a claim "against the debtor" within the scope of section 362(a)(1) even when the creditor seeks only to bring the alter ego's assets into the bankruptcy estate for the benefit of all creditors. St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 701 (2d

Cir. 1989) ("The [alter ego] claims, if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors. It therefore would be illogical to distinguish between this type of claim against a third party and a claim against the debtor."). Thus, even when a creditor seeks to have fraudulently conveyed property returned to the debtor-transferor's estate, the creditor's action against the transferee remains an attempt to recover its claim against the debtor, if indirectly, and is stayed by section 362(a)(1).

The Court therefore concludes that the bankruptcy court was correct insofar as it found that the First Decretal Paragraph in the Third Amended Judgment violates the automatic stay. It bears noting that this result does not leave a creditor bereft of options. A creditor wishing to pursue a fraudulent conveyance claim and contribute the proceeds to the bankruptcy estate must in the first instance petition the trustee to bring such an action on behalf of all creditors. See 11 U.S.C. §§ 544, 548 (authorizing trustee to bring fraudulent conveyance claims). Should the trustee (or debtor-in-possession) unreasonably fail to bring such an action, the creditor may move the court for derivative standing to bring the suit in the trustee's place. In re STN Enterprises, 779 F.2d 901, 904 (2d Cir. 1985); see Commodore Int'l Ltd. v. Gould, 262 F.3d 96, 100 (2d Cir. 2001) (holding creditors' committee may bring suit where debtor-in-possession unreasonably fails to do so); see also Glinka v. Federal Plastics Mfg. 310 F.3d 64, 71 n.7 (2d Cir. 2002) (noting Commodore's derivative standing extends to individual creditors). Alternatively, a creditor may request relief from the automatic stay to pursue the claims in another forum, as Nachama has done here.

C.    Scope of the Lift Stay.

The bankruptcy court in this case granted the parties limited relief from the automatic stay to "pursue entry of a judgment in the state court matrimonial action." Lift Stay Order, at 9. The court characterized the purpose of such relief as allowing "the parties to settle competing judgments based on the state court decision," and noted that the "stay needs to be lifted so that the state court decision can be reduced to judgment and for purposes of appeal." Id. at 7, 8.  The court also emphasized its understanding that entry of the judgment in the state court decision "would not transfer [the properties] because of the bankruptcy." Id. at 8.  In its Decision on the Third Amended Judgment, the bankruptcy court found that the First Decretal Paragraph exceeded the scope of the relief granted by the Lift Stay Order because it was inconsistent with the state court judgment and contemplated a property transfer which the court had understood to be precluded.

The inconsistency which the bankruptcy court perceived between the state court's Decision After Trial and the First Decretal Paragraph is not immediately apparent to this Court. The state court decision clearly contemplated returning the shares in the Entity Debtors to Benjamin's estate, stating that "[t]itle to [the Trust Properties] *and ownership of the shares* in the various limited liability companies created shall revert to Benjamin's name since he held title and owned the shares before he fraudulently conveyed them after the commencement of the action." Decision After Trial at 23 (emphasis added).  The First Decretal Paragraph proposes as much of this as may be done without violating the bankruptcy court's rulings regarding transfer of real properties:  title to the shares of the Entity Debtors will return to Benjamin's estate, but title to the Trust Properties will remain held by the Entity Debtors.  Thus, the Court does not perceive how the proposed Third Amended Judgment is inconsistent with the state court's

Decision After Trial or necessarily exceeds the scope of the stay relief which the bankruptcy court had previously granted.

The bankruptcy court did indicate that it objected to Nachama's efforts to increase the size of Benjamin's bankruptcy estate:

> Mrs. Hirsch's attempts to have the state court order the Trust to transfer its ownership interests in the entity debtors and Sullivan Land Company, Inc. to Hirsch is nothing more than a blatant attempt to increase the assets of the Hirsch estate. In short, Hirsch would acquire the entity debtors and the properties the Court previously determined to belong to the entity debtors. Mrs. Hirsch proposes this action in the hope of realizing a greater distribution through the bankruptcy process through the Hirsch bankruptcy and plan, following this Court's determination that she has no claim against the entity debtors.

Decision on Third Amended Judgment at 10–11.  Attempts to increase the assets of a debtor's estate would seem not to pose a problem, if they do not interfere with the administration of that or any other bankruptcy estates.  Indeed, the fiduciary status of bankruptcy trustees and debtors-in-possession obligates them to pursue claims which might increase the value of an estate.  See 11 U.S.C. § 704(1).  Where a debtor-in-possession unreasonably fails to pursue a fraudulent conveyance claim in dereliction of his fiduciary duties, a creditor should generally be granted authority to act.  In the present case, it appears that reconveying the shares of the Entity Debtors from the Trust to Benjamin's estate will not affect the Entity Debtors' bankruptcy estates, and may increase the size of Benjamin's bankruptcy estate.

However, the Court recognizes that the bankruptcy court's construction of its own Lift Stay Order is due substantial deference, cf. United States v. Canova, 412 F.3d 331, 346 (2d Cir. 2005) (deferring to district court's interpretation of its own order).  The Court therefore declines to vacate the bankruptcy court's order but rather requests a fuller explanation from that court of

the precise conflict it perceived between the First Decretal Paragraph and its own Lift Stay Order or the state court's Decision After Trial. The Court therefore will remand the case back to the bankruptcy court so that the parties may obtain such an elaboration of the basis for the bankruptcy court's ruling. This Court will retain jurisdiction over the case and the parties will not need to file a new notice of appeal. Cf. United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994) (remanding to district court for supplementation of record and retaining jurisdiction for further proceedings); see also In re Target Two Assocs., 2005 U.S. Dist. LEXIS 8971, *13–14 (S.D.N.Y. May 16, 2005) (remanding to bankruptcy court but retaining jurisdiction for further proceedings). The parties shall file a notice with the Court within ten (10) days of receiving elaboration from the bankruptcy court, a copy of which shall be provided to this Court.

Finally, as noted above, Benjamin has argued that the fraudulent conveyances have been unwound by the payment of value pursuant to the Entity Debtors' confirmed bankruptcy plan. Although this argument does not address whether Nachama's proposed judgment exceeds the scope of the Lift Stay Order, it may have other relevance. If the conveyances in fact have been unwound, then there would be no basis for Nachama to continue to seek the remedy of reconveying the shares in the Entity Debtors.

Nachama argues that the transactions could not have been unwound because the properties themselves have not been returned. Although New York's DCL anticipates that payment of value may in some cases be appropriate, the law gives creditors the option to seek return of the actual property that was fraudulently conveyed and does not leave the choice of remedy to either the transferor or transferee. N.Y. Deb. & Cred. Law § 278. In addition, Nachama asserts that because the DCL provides that a creditor may set aside a fraudulent conveyance "to the extent necessary to satisfy his claim," id., and she has a claim against

Benjamin of more than $2 million, the payment of $136,164.74 pursuant to the Entity Debtors' bankruptcy plan is necessarily insufficient. Since neither the state court nor the bankruptcy court has made any formal finding as to whether the fraudulent conveyances have been unwound, and it is not clear whether such a finding was implicit in either of the orders of the bankruptcy court being appealed here, this Court declines to decide this issue in the first instance. This Court seeks clarification on remand to the bankruptcy court as to whether such a finding underlay that court's refusal to allow submission of the proposed Third Amended Judgment to the state court.

**IV.     Conclusion**

For the foregoing reasons, the Court finds in case number 05-CV-1454 that the bankruptcy court had jurisdiction to determine the amount of Nachama's claim against Benjamin's estate, based on her claim for equitable distribution from the marital estate. The Court also finds, however, that the bankruptcy court erred when it determined the amount of that claim. The Court therefore VACATES the bankruptcy court's order determining the amount of Nachama's claim, and REMANDS the matter to the bankruptcy court for further proceedings consistent with this opinion.

In case number 05-CV-2266, the Court finds that the bankruptcy court correctly held that the First Decretal Paragraph in the Third Amended Judgment which Nachama proposed to be settled in state court fell within the terms of the automatic stay of 11 U.S.C. § 362(a). Nevertheless, the Court REMANDS this matter to the bankruptcy court for supplementation of the record on the issue of whether said judgment violates the terms of the Lift Stay Order. On remand, the bankruptcy court should provide a fuller statement of the conflict which it perceives between the First Decretal Paragraph, the state court's Decision After Trial, and its own Lift Stay

24

Order.  The bankruptcy court also should state whether the purported satisfaction of the

fraudulent conveyances was a factor in its decision not to allow submission of the proposed

Third Amended Judgment to the state court.  The Court will retain jurisdiction to hear further

proceedings without requiring an additional notice of appeal.  Cf. Jacobson, 15 F.3d at 22

(remanding for supplementation of record and retaining jurisdiction for further proceedings); see

also In re Target Two Assocs., 2005 U.S. Dist. LEXIS 8971, at *13–14 (same).  Any party

seeking to proceed in this appeal shall so inform the Court within 10 days of any additional

findings or clarification by the bankruptcy court.

 SO ORDERED.


             CAROL BAGLEY AMON
 Dated:  Brooklyn, New York     United States District Judge
    March 10, 2006